NATEYSHA MONK ET AL. *v.* TEMPLE GEORGE ASSOCIATES, LLC, ET AL.
(AC 24275)

Foti, Bishop and West, Js.

Argued January 9—officially released May 4, 2004

*Steven D. Jacobs*, for the appellant (named plaintiff).

*Jonathan A. Beatty*, for the appellees (named defendant et al.).

*Opinion*

FOTI, J. In this negligence action, the plaintiff Nateysha Monk[1] appeals from the trial court's judgment, rendered after it granted the motion for summary judgment that was filed by the defendants Temple George Associates, LLC, and Pro Park, Inc.[2] On appeal, the plaintiff claims that the court improperly granted the motion for summary judgment because there is a genuine issue of material fact as to (1) whether the defendants had a legal duty to protect her and (2) whether the defendants' conduct was the proximate cause of her injuries. We disagree with the plaintiff and affirm the judgment of the trial court.

The following undisputed facts are relevant to our resolution of the plaintiff's claims. On December 26, 1998, the plaintiff attended a New Haven nightclub and parked her car at the defendants' parking lot for a fee. While in the nightclub, Ayishea Denson, a former girlfriend of the plaintiff's husband, verbally confronted the plaintiff, as she had done on past occasions.[3] The plaintiff then left the nightclub, and Denson followed

---

[1] Jermaine Monk, Nateysha Monk's husband, also was a plaintiff and sought damages on his claims for loss of consortium. Only Nateysha Monk has appealed from the judgment and we refer to her in this opinion as the plaintiff.

[2] John LoRicco, doing business as the Alley Cat Club, and Ayishea Denson also were defendants in the underlying action, but neither is involved in this appeal. We therefore refer in this opinion to Temple George Associates, LLC, and Pro Park, Inc., as the defendants.

[3] Two years prior to the incident at issue in this appeal, Denson challenged the plaintiff to a fight while the two visited a New Haven nightclub.

her, continuing the verbal attack. Denson then physically attacked the plaintiff in the defendants' parking lot.

The plaintiff filed the present action on January 17, 2001, alleging that her injuries were caused by the defendants' negligence. In their answer, filed August 6, 2001, the defendants denied those allegations. On April 25, 2002, the defendants filed a motion for summary judgment, claiming that (1) they did not have a legal duty to protect the plaintiff from such an attack, and (2) their conduct was not the proximate cause of the attack. In its memorandum of decision, filed April 29, 2003, the court agreed with the defendants and concluded that (1) because the type of harm alleged was not reasonably foreseeable, the defendants did not have a legal duty to protect the plaintiff from such an attack, and (2) even if the plaintiff presented evidence to support a claim of duty, she would fail on the issue of proximate cause. This appeal followed.

We begin by setting forth our standard of review. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003).

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . First, it is necessary to determine the existence of a duty . . . ." (Internal quotation marks omitted.) *Baptiste* v. *Better Val-U Supermarket, Inc.*, 262 Conn. 135, 138, 811 A.2d 687

(2002). Here, because the plaintiff parked her car at the defendants' parking lot for a fee, she was a business invitee, and the defendants owed her a duty to keep their premises in a reasonably safe condition. See id., 140. The issue presented in this appeal, however, is whether the defendants had a legal duty to protect the plaintiff from this type of attack occurring on its premises.

"The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . Our Supreme Court has stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Citations omitted; internal quotation marks omitted.) *Abramczyk* v. *Abbey*, 64 Conn. App. 442, 445, 780 A.2d 957, cert. denied, 258 Conn. 933, 785 A.2d 229 (2001).

The court determined that, as a matter of law, the defendants did not owe the plaintiff a duty to protect her from the type of harm complained of. To the contrary, the plaintiff argues extensively that there is a genuine issue of material fact on the issue of foreseeability that would preclude the granting of the defendants' motion for summary judgment. Specifically, the plaintiff argues that she produced adequate evidence to create a genuine issue of material fact as to whether the defendants, knowing what they knew, or in light of

what they should have known, about the crime in the area in which the parking lot is located, anticipated the type of harm that occurred. We, however, need not address that argument under the first prong of the analysis concerning the existence of a duty if public policy requires that no legal duty be imposed on the defendants. See, e.g., *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 618 n.11, 783 A.2d 462 (2001). We therefore must look at the public policies at issue under the second prong of our duty analysis.

We note that "[t]he fundamental policy purposes of the tort compensation system [are] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct . . . . It is sometimes said that compensation for losses is the primary function of tort law . . . [but it] is perhaps more accurate to describe the primary function as one of determining when compensation [is] required. . . . An equally compelling function of the tort system is the prophylactic factor of preventing future harm . . . . The courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer. . . . [I]mposing liability for consequential damages often creates significant risks of affecting conduct in ways that are undesirable as a matter of policy. Before imposing such liability, it is incumbent upon us to consider those risks." (Citations omitted; internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 578–79, 717 A.2d 215 (1998).

To impose a legal duty on the defendants under the circumstances of this case would (1) be tantamount to imposing strict liability on a parking lot owner or operator for any injury occurring on its property no matter what the circumstances, (2) not act as a deterrent, given the unique circumstances of the attack at issue, where a known attacker attacked the plaintiff

because of a personal dispute that arose two years earlier and (3) shift the cost of the plaintiff's harm to parties who were not directly, if at all, responsible for the injuries. The policy goals of the tort compensation system would, therefore, not be met if we were to permit a legal duty to be imposed on the defendants. Consequently, although we do not conclude that a parking lot operator or owner never has a legal duty to protect business invitees from attacks occurring on its premises, public policy requires this court to conclude, as a matter of law, that the defendants did not have a legal duty to protect the plaintiff from the attack at issue.[4]

The judgment is affirmed.

In this opinion WEST, J., concurred.

BISHOP, J., dissenting. The core question presented in this appeal is whether the owners and managers of a parking lot who invite members of the public to park their vehicles in the lot for a fee during evening hours have a legal duty of care to provide reasonable protections to their invitees against the harm of being physically assaulted by third parties in the parking lot. Rather than address this question, the majority recasts the issue to ask whether, on public policy grounds, the defendants, Temple George Associates, LLC (Temple), and Pro Park, Inc. (Pro Park),[1] should have a responsibility to afford reasonable protection to this plaintiff, Nateysha Monk, against assault by her husband's ex-girlfriend. I would reverse the judgment of the trial court because I disagree with the majority's policy analysis, and I believe the trial court incorrectly decided the factual issue of foreseeability.

---

[4] Because we conclude, as a matter of law, that the defendants did not have a legal duty to protect the plaintiff from the type of attack at issue, we need not address the plaintiff's claim concerning causation.

[1] For the purpose of clarity, we refer only to Temple and Pro Park as the defendants since they are the only parties involved in this appeal.

The underlying factual allegations are uncomplicated. The plaintiff filed a multicount complaint against (1) the owner of a parking lot, Temple, (2) the manager of the parking lot, Pro Park, (3) the proprietor of a nightclub, John LoRicco, doing business as the Alley Cat Club, and (4) Ayishea Denson, a former girlfriend of the plaintiff's husband. The plaintiff claimed that during the evening of December 26, 1998, she parked her motor vehicle in the defendants' parking lot located on College Street in New Haven and paid an attendant the required parking fee. She alleged additionally that after parking her car, she went to the Alley Cat Club where she was accosted by Denson. At approximately 2 a.m., she left the bar and headed back to her vehicle. While in the parking lot, she was physically assaulted by Denson. In her complaint, the plaintiff claims, inter alia, that her injuries were due to the negligence of Temple and Pro Park by reason of their failure to have sufficient security personnel on the premises, failure to keep the premises reasonably safe for business invitees, failure to enact and or to enforce adequate safety measures, failure to warn the plaintiff and other persons authorized to be on the premises that they may be assaulted on the premises, failure to warn the plaintiff and other business invitees that the parking lot attendant would not be on the premises at all times, and, lastly, that the defendants failed to illuminate the parking lot adequately.

In response to the complaint, the defendants filed a motion for summary judgment premised on their claims that they had no legal duty to protect the plaintiff from the attack and that their conduct was not the proximate cause of the attack. The plaintiff filed an opposition to the defendants' motion for summary judgment, and included an affidavit and investigative report prepared by an expert concerning the issue of foreseeability. The report indicates that the parking lot in question is

located at 189-95 College Street and that it is bounded on either side by buildings, that it contains spaces for seventy cars and that sight lines within the parking lot are, in some places, obstructed. The report further indicates that at the entrance to the parking lot, there was a sign stating: "PLEASE SEE ATTENDANT Vehicles without valid ticket or pass towed at owner's expense. NO PARKING IF LOT UNATTENDED." The report notes that there was no attendant on duty when the assault occurred. As to the potential dangerousness of the area in which the incident took place, the report indicates that the parking lot is located in an area in which there are several nightclubs and where numerous "street people" can be seen scavenging for bottles and other items. It also indicates that the New Haven police department regularly deploys extra police officers to that area as a strategy of "crowd control" to deal with the numbers of people exiting the various entertainment venues at closing time. Additionally, the report states that crime statistics from the Federal Bureau of Investigation reveal that the city of New Haven had the highest rate of serious crime among Connecticut's major cities during the relevant time period. Finally, the expert indicates that he has "personal knowledge that serious crimes have occurred with some frequency in the area of Crown and George Street in New Haven, the locale of the injury to the Plaintiff." On the basis of this information, the plaintiff's expert concluded that the defendants knew or should have known that unruly behavior by bar patrons at closing time created a risk of injury to people or property in the area of the defendants' parking lot.

In response to the defendants' motion for summary judgment, the trial court concluded that while the defendants had a duty reasonably to care for their business invitees, they did not have a duty to protect the plaintiff from this particular attack because it was not foresee-

able. Additionally, the court observed that the defendants would have been entitled to summary judgment on the ground that, as a matter of law, any negligence on their part was not the proximate cause of the plaintiff's injuries.

The majority states, and I agree, that in assessing the granting of a motion for summary judgment, we need not review the court's determination on the issue of foreseeability if, on policy grounds, the defendants should not be held responsible for the plaintiff's injuries. I disagree, however, with the majority's conclusion that we should not impose on the defendants a duty to protect the plaintiff *from this particular attack.* I respectfully believe that the majority has misconstrued the nature of the duty in question since the imposition of a duty does not depend on the identity of the attacker or on the presence or absence of a relationship between the assailant and victim. Rather, it depends on the nature of the relationship between the plaintiff and the defendants. See 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 25:05, p. 25-7; *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 385, 650 A.2d 153 (1994); see also W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 42, p. 274 ("[t]he question whether there is a duty has most often seemed helpful in cases where the only issue is in reality whether the defendant stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit").

In the present case, the plaintiff was a business invitee of the defendants. Thus, as the majority correctly points out, the defendants had a duty to the plaintiff to exercise reasonable care to protect the plaintiff from dangers that were either actually known by them or reasonably foreseeable. Cf. *Baptiste* v. *Better Val-U-Supermarket,*

*Inc.*, 262 Conn. 135, 138–41, 811 A.2d 687 (2002).[2] The majority is, however, unwilling to impose that duty in the present case based on the specific identity of the plaintiff's assailant, the specific nature of the assault, and the fact that the plaintiff and the assailant were not strangers. I respectfully believe that this portion of the majority's analysis is legally incorrect. As has been oft-stated, the test for whether a duty of care exists does not require that "one charged with negligence must be found actually to have foreseen the probability of harm or that *the particular injury which resulted was foreseeable*, but the test is, would the ordinary [person] in the [defendants'] position, knowing what he knew or should have known, anticipate that harm *of the general nature of that suffered* was likely to result?" (Emphasis added; internal quotation marks omitted.) *Jaworski* v. *Kiernan*, 241 Conn. 399, 405, 696 A.2d 332 (1997).

As the majority has noted, however, the imposition of a duty on a defendant involves considerations of both foreseeability and public policy. Thus, even if the plaintiff's injury could reasonably have been foreseen, a duty of care will not be imposed on the defendants if public policy considerations do not support it. See, e.g., *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 618 n.11, 783 A.2d 462 (2001). On that basis, the majority reached the issue of public policy without considering foreseeability and determined that no legal

[2] The imposition of that duty is also in accord with the generally accepted notion that a possessor of land is subject to liability to the members of the public whom the possessor invites onto that land for the possessor's business purposes. See 2 Restatement (Second), Torts § 344, pp. 223–24 (1965) ("possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it").

duty should be imposed in this instance. I disagree, respectfully, with the majority's analysis of public policy.

At the outset, it is useful to observe that our analysis of public policy must take place in a legal context. As noted, it is a basic legal tenet that one in possession of property has a duty of care to his or her business invitees to afford them reasonable protections against foreseeable harm. 2 Restatement (Second), Torts § 344 (1965). The question, then, is whether there are reasons founded on public policy to constrict that generally applicable principle of premises liability in this instance. I find no reason to impose such a limitation.

In considering whether public policy suggests the imposition of a duty, we have been instructed to consider the following four factors: "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." *Murillo* v. *Seymour Ambulance Assn., Inc.*, 264 Conn. 474, 480, 823 A.2d 1202 (2003).

As to the first criterion, regarding the normal expectations of participants in the activity, I believe that the "participants" are those in possession of the parking lot as well as their business invitees, and the "activity" is that of parking one's motor vehicle in that lot so that one may enjoy the downtown area. In this instance, when a driver enters the parking lot, the driver is required to pay a fee for parking when an attendant is on duty. That driver is also confronted, however, by a sign stating that parking is not permitted if an attendant is not on duty. From these circumstances, I believe that a driver has a reasonable expectation that the parking lot is and will be attended while one's motor vehicle is

parked in the lot, and that one will be able to traverse the parking lot safely in order to depart from and return to one's motor vehicle.

As to the second criterion, regarding the public policy of encouraging drivers to utilize such parking lots so that they may enjoy the downtown area in the evening, I believe that public policy suggests the imposition of a duty, as such action would likely encourage people to travel downtown since they would feel safer using a downtown parking lot.[3] On the other hand, restricting the liability of parking lot owners and managers under these circumstances would likely discourage public use of downtown areas because of the perceived dangerousness of the environ. I believe also that an outcome that causes the burden of enhancing public safety to be borne not only by the public but shared by downtown private economic interests is consonant with sound public policy. To the extent that undertaking reasonable precautions against foreseeable risks entails marginal costs, I conclude that the assignment of these extra costs to users by way of increased parking fees would not violate public policy if consequent increased safety resulted in a greater use of the parking lot in the evening. To the contrary, such measures, to the extent they would increase the likelihood and frequency of downtown traffic, would appear to be consistent with public policy. Additionally, the provision of reasonable precautions to safeguard against foreseeable harm likely would reduce the risk of harm to business invitees, an amelioration of danger that could enhance the likelihood of public use of downtown facilities in the evening. In short, there is reason to conclude that the imposition of a responsibility on parking lot owners and managers to provide for the reasonable protection of business

---

[3] It is difficult to conceive of an argument that a city, here, the city of New Haven, would not want to encourage public enjoyment of its downtown venues during the evening.

invitees against foreseeable harm from the criminal activity of third parties would likely result not only in a diminished risk of harm to their invitees but also in greater use of downtown parking facilities in the evening.

The third factor involved in a public policy analysis is the determination of whether the imposition of a duty in a particular circumstance would likely increase litigation. At first blush, it might seem the imposition of such a duty on downtown landowners and those in possession of downtown properties could foster litigation based on familiar notions of "deep pockets." Upon further analysis, however, if the coercive purpose of imposing a duty is to cause the proper utilization of reasonable safety precautions, then the consequence of such a policy should be a lessening of injurious incidents and a consequent decrease in litigation. I find no basis to conclude, therefore, that the result of requiring parking lot owners and managers to provide reasonable protections would be additional litigation. Consequently, I disagree with the majority's conclusion that the imposition of such a duty on the defendants would have no deterrent effect.

In addition, unlike the majority, I do not believe that the imposition of such a duty on a parking lot owner and manager would be tantamount to imposing strict liability. To the contrary, the imposition of such a duty would require only that one in possession of land undertake reasonable precautions for the safety of business invitees. Since the question of whether certain safeguards are reasonable is, in the main, one of fact, the imposition of such a duty would simply afford the plaintiff the opportunity to prove that this assault was foreseeable, that the defendants did not take reasonable precautions to protect the plaintiff against the assault and that the defendants' negligence was a substantial factor in producing the plaintiff's injuries. Thus, the

majority's conclusion that the imposition of a duty in this instance on the defendants would be tantamount to imposing strict liability is legally incorrect.

Also, as to the policy consideration of potential litigation, I believe the majority is incorrect in its conclusion that the imposition of a duty on the parking lot defendants to bear the cost of a wilful assault by a third party would unreasonably redirect the cost of one's wilful misbehavior away from the actor. First of all, the notion that an assailant should bear the financial burden of his or her misconduct, while apt in theory, generally affords no practical relief to an injured party. Moreover, and contrary to the majority's conclusion, I know of no authority for the proposition that the imposition of a duty on the defendants would relieve the actor of his or her responsibility. Rather, it represents a separate basis for recovery in addition to one's claim against the actor.

I also believe that a landowner or one in possession who invites the public onto its premises for business purposes is, by reason of his or her familiarity with the area surrounding his or her property, in a superior position to assess the risk of harm from criminal attack. Because the landowner controls the premises, he or she is in a unique position to take reasonable measures to deter criminal behavior on the premises for the protection of those invited to use the premises.[4]

The final consideration in a public policy analysis is the decisional law of other jurisdictions. In this regard, I have found no uniformity in the manner in which this question is addressed. Rather, there are two principal schools of thought.[5] In some jurisdictions, a parking lot

---

[4] For an elucidation of this point, see 42 Am. Jur., Proof of Facts 2d, p. 173, Landowner's Failure to Provide Adequate Security (1985).

[5] For a thorough discussion of this issue, see annot., 49 A.L.R.4th 1257 (1986).

owner will not be held responsible for an assault on a patron unless there is evidence that there have been prior criminal acts in the parking lot itself. See, e.g., *Selektor* v. *Smiles Parking Co.*, 210 App. Div. 2d 18, 618 N.Y.S.2d 813 (1994), leave to appeal denied, 85 N.Y.2d 807, 650 N.E.2d 1325, 627 N.Y.S.2d 323 (1995). In *Selektor*, the court held that the owner of a parking lot had no duty to provide protective measures to a person murdered inside the parking lot absent a showing that the lot owner had experience with or knowledge of criminal activity inside or near the lot. Id., 18. Jurisdictions requiring evidence of past criminal acts are known to have adopted the "prior similar incidents" rule. Other jurisdictions have adopted a "totality of circumstances" rule. Under this view, a parking lot proprietor may be held to a duty to take reasonable precautions against criminal attack on a patron even absent proof of prior similar crimes where all the circumstances, including prior criminal activity and crime-prone conditions in and near the parking lot, are sufficient to put the lot proprietor on notice that such attacks are possible. See, e.g., *Isaacs* v. *Huntington Memorial Hospital*, 38 Cal. 3d 112, 126–27, 695 P.2d 653, 211 Cal. Rptr. 356 (1985). In *Isaacs*, the court held that the failure of a plaintiff who was assaulted in a parking lot to show the existence of prior similar incidents was not fatal to his claim against the defendant parking lot owner. Id., 130–31. The court reasoned that the showing of crime-prone conditions in the vicinity of the lot was sufficient to raise a jury question as to whether the assault was foreseeable even in the absence of prior similar attacks in the lot. Id.

Although Connecticut has not formally adopted either the prior similar incidents rule or the totality of circumstances rule, it is apparent that the existence of prior criminal activity will be viewed as a significant factor in determining foreseeability. See *Stewart* v. *Fed-*

*erated Dept. Stores, Inc.*, 234 Conn. 597, 613, 662 A.2d 753 (1995). It is noteworthy, however, that our Supreme Court has not said that evidence of a prior criminal occurrence is the sine qua non of the imposition of a duty. To the extent that this precise question has yet to be answered in Connecticut, I find soundness in the reasoning of one commentator who observed: "The modern trend appears to be that the foreseeability of a violent crime being perpetrated on a patron is not absolutely dependent upon notice of prior crimes of a similar nature occurring on or near the parking facility premises, but may also be determined from all the circumstances present." 9 Am. Jur., Proof of Facts 3d, p. 597, Premises Liability—Failure to Protect Parking Facility Patron from Criminal Attack (1990). In sum, while I agree that proof of prior criminal acts of a same or similar nature at the specific location of the injury is an important factor in determining the issue of foreseeability, such proof should be understood as a significant but not controlling factor in the assessment of the foreseeability of the risk of harm to a parking lot patron from the criminal acts of third parties. The more flexible totality of circumstances approach to this issue creates less risk of violence to our general jurisprudence of premises liability than the more restrictive approach that imposes liability only in those instances in which there is proof of past criminal activities on the premises.

Having concluded that there is no public policy reason to insulate the Temple and Pro Park defendants from liability, I am required, therefore, to review the court's determination that the assault on the plaintiff was not foreseeable. My difficulty with the trial court's analysis concerns the court's construct that this assault was perpetrated by a particular individual. Having made that determination, the court then concluded that the assault was not reasonably foreseeable. As noted, however, the notion of foreseeability does not require one

to foresee the specific harm, but only a harm of the same general nature as that alleged. *Jaworski* v. *Kiernan*, supra, 241 Conn. 405. Thus, in this case, the question was whether an assault on the plaintiff while going from or to her motor vehicle in the parking lot was reasonably foreseeable.

Furthermore, in determining that the contents of the expert's report concerning the dangerousness of the area of the crime were inadequate, I believe that the court improperly engaged in a weighing of the evidence rather than in a determination of whether any reasonable jurist could determine that the assault was foreseeable. The court's memorandum of decision reflects that the court determined, as a matter of fact, that the plaintiff's allegations and supporting documentation were inadequate to surmount summary judgment. Weighing evidence, however, is not the court's function in ruling on a motion for summary judgment. See *Siudyla* v. *ChemExec Relocation Systems, Inc.*, 23 Conn. App. 180, 184, 579 A.2d 578 (1990) ("In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . If a genuine issue exists, it must be left to a later determination after a full hearing." [Citation omitted.]).

Had the court correctly exercised its role, I believe it would have found that the facts alleged by the plaintiff in her complaint and in the documentation she filed in opposition to the motion for summary judgment fairly established the existence of a genuine issue of material fact. Put another way, I do not believe that in viewing the evidence in the light most favorable to the plaintiff, the court could have concluded that fair and reasonable persons could reach but one conclusion that the assault was not foreseeable. I therefore believe that summary judgment was not appropriate in the present case, as

the issue of foreseeability remained a factual question for the jury's consideration.

Additionally, to the extent that the trial court based its determination on the absence of a history of criminal activity in the parking lot itself, I believe that the court improperly narrowed its consideration of foreseeablity to one factor. In this respect, the court, without saying so, appears to have adopted the prior incidents rule instead of assessing the totality of the circumstances in its determination of whether a genuine issue of material fact was raised with regard to the question of foreseeability. When one applies the totality of the circumstances test to the present case, I believe that a genuine issue of material fact clearly exists. For example, the report filed by the plaintiff's expert stated that the city of New Haven has a high rate of serious crime, that there are several nightclubs in the area of the parking lot, that the area is frequented by "street people," that the police routinely provide extra patrols in this area during the times at which the bars typically close to effectuate crowd control, and that "serious crimes have occurred with some frequency in the area of Crown and George Street in New Haven, the locale of the injury to the Plaintiff." The affidavits and supporting documentation submitted by the plaintiff, when viewed in a light most favorable to the plaintiff, could have provided the jury with a reasonable basis for determining that the assault on the plaintiff was reasonably foreseeable by the defendants. Thus, a genuine issue of material fact existed and, as such, summary judgment was inappropriate.

Finally, although the majority was not required to review the trial court's determination that summary judgment should be granted on the alternate ground that the plaintiff could not, as a matter of law, prove that the defendant's negligence was the proximate cause of her injuries, I must reach this issue to adequately assess

the plaintiff's appeal. Here, I believe the court was legally incorrect. As noted, the imposition of liability on the criminal actor need not be exclusive. Under appropriate circumstances, owners and managers of a parking lot may be liable to a patron for the criminal acts of a third party if such conduct was reasonably foreseeable and if the failure of the owners and managers to exercise reasonable care was a substantial factor in causing the plaintiff's injuries. *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 613. In *Stewart*, the administrator of an estate brought an action against a parking garage owner for the death of the decedent resulting from her murder by a third party in the garage. Id., 599. Affirming the judgment in favor of the plaintiff, the Supreme Court held that the trial court correctly had denied the defendant's motion for a directed verdict and properly submitted the issue of causation to the jury for its factual determination. Id., 610–13. In this case, as in *Stewart*, the question of whether Denson's criminal assault on the plaintiff was within the scope of the risk created by the defendants' negligent conduct is a question for the fact finder. In short, it was legally incorrect for the trial court to determine that the intentional act of Denson must lead inescapably to the conclusion that the plaintiff could not, as a matter of law, prove that the defendants' negligence was a substantial factor in producing her injuries.

Because I would reverse the trial court's decision granting the defendants' motion for summary judgment, I respectfully dissent.