NATEYSHA MONK ET AL. *v.* TEMPLE GEORGE
ASSOCIATES, LLC, ET AL.
(SC 17214)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued January 12—officially released March 29, 2005

*Steven D. Jacobs*, for the appellant (named plaintiff).

*Jonathan A. Beatty*, for the appellees (named defendant et al.).

NORCOTT, J. This certified appeal arises out of a vicious attack on the named plaintiff, Nateysha Monk,[1] perpetrated by her husband's former girlfriend, Ayishea Denson,[2] with whom the plaintiff was familiar, in a parking lot owned by the defendant Temple George Associates, LLC, and managed by the defendant Pro Park, Inc. (collectively defendants), where the plaintiff had parked her car for an evening. The primary issue is whether the Appellate Court improperly affirmed the decision of the trial court granting the defendants' motion for summary judgment on the ground that it is inconsistent with public policy to impose on parking lot owners and managers a duty of care to business invitees who are attacked intentionally on the premises by assailants with whom the invitees are acquainted. See *Monk* v. *Temple George Associates, LLC*, 82 Conn. App. 660, 665, 846 A.2d 933 (2004). The plaintiff claims that the Appellate Court improperly determined that the defendants did not owe her a duty of reasonable care in light of her familiarity with Denson, and asks this court to invoke its supervisory powers to consider whether the trial court improperly concluded that there was no genuine issue of material fact with respect to the issue of causation. We reverse the judgment of the Appellate Court.

The following relevant facts are undisputed. "On December 26, 1998, the plaintiff attended a New Haven nightclub and parked her car at the defendants' parking

---

[1] Although Jermaine Monk, Nateysha Monk's husband, was also a plaintiff and sought damages for loss of consortium, he is not involved in this appeal. Hereafter all references in this opinion to the plaintiff are to Nateysha Monk.

[2] During the attack, Denson slashed the plaintiff about the face, neck, chest and thigh. As a result, the plaintiff has suffered painful permanent injuries, including: shock to her nervous system; multiple lacerations; keloid and regular scarring; and skin fibrosis. She has lost time from work and has incurred medical expenses.

lot [on College Street] for a fee. While in the nightclub . . . Denson, a former girlfriend of the plaintiff's husband, verbally confronted the plaintiff, as she had done on [a] past [occasion two months earlier]. The plaintiff then left the nightclub, and Denson followed her, continuing the verbal attack. Denson then physically attacked the plaintiff in the defendants' parking lot." Id., 661–62.

The plaintiff alleges the following additional facts that are relevant to the resolution of her claims. On the evening that the plaintiff entered the defendants' lot and paid the attendant, she saw multiple signs posted around the premises. One of those signs stated that parking was not permitted if the lot was unattended.[3] Later that evening, at the time of the attack, there was no attendant supervising the area.[4] Additionally, according to a report prepared by the plaintiff's expert witness, Neil A. Sullivan,[5] an expert in the field of security, the area surrounding the parking lot was known to have a high incidence of crime. The plaintiff alleges that her injuries were substantially caused by the negli-

---

[3] During her deposition, the plaintiff testified that she saw signs around the lot, but could not recall what they said. The plaintiff's allegation about the content of this particular sign is, therefore, based, at least in part, on a site visit and report prepared by her expert witness, Neil A. Sullivan. See footnote 4 of this opinion.

[4] The plaintiff testified at her deposition that she did not, in fact, have any direct knowledge that the lot was unattended at the time of the incident because, although the attendant was neither in sight nor responsive to the situation, the plaintiff never actually searched for the attendant either. Notably, the defendants have never affirmatively denied that their lot *was* unattended at the time of the incident; they have simply denied the claim in the complaint that "[o]n and before December 26, 1998, [the] parking lot was in a dangerous, defective and unsafe condition in that it was inadequately supervised, secured and lighted." For the purposes of the present appeal, we view the facts in a light most favorable to the plaintiff and assume that the lot was unattended at the time of the attack.

[5] We note that a copy of Sullivan's report was appended to the plaintiff's memorandum in opposition to the defendants' motion for summary judgment; the trial court was, therefore, aware of the area's incidence of crime when making its determination.

gence of the defendants in failing to: (1) have sufficient security personnel on the premises at all times; (2) keep the premises reasonably safe; (3) enact and/or enforce adequate safety measures; (4) warn persons authorized to be on the premises that they may be assaulted; (5) warn business invitees that a parking lot attendant would not be present at all times; and (6) adequately illuminate the parking lot.

The defendants denied those allegations and thereafter filed a motion for summary judgment, claiming that (1) they did not have a legal duty to protect the plaintiff from such an attack, and (2) their conduct was not the proximate cause of the attack. The trial court granted summary judgment, concluding that, because the type of harm alleged was not reasonably foreseeable, the defendants did not have a legal duty to protect the plaintiff from such an attack, and, furthermore, that even if the defendants owed a duty to the plaintiff, she would fail on the issue of proximate cause. Id., 662.

The plaintiff thereafter appealed from the judgment to the Appellate Court. The Appellate Court did not consider the issue of proximate causation, but nevertheless affirmed the judgment of the trial court on public policy grounds, holding that "[t]he policy goals of the tort compensation system would . . . not be met if we were to permit a legal duty to be imposed on the defendants.[6] Consequently . . . as a matter of law . . . the defendants did not have a legal duty to protect the

---

[6] The Appellate Court explained its public policy analysis as follows: "To impose a legal duty on the defendants under the circumstances of this case would (1) be tantamount to imposing strict liability on a parking lot owner or operator for any injury occurring on its property no matter what the circumstances, (2) not act as a deterrent, given the unique circumstances of the attack at issue, where a known attacker attacked the plaintiff because of a personal dispute that arose two years earlier and (3) shift the cost of the plaintiff's harm to parties who were not directly, if at all, responsible for the injuries." *Monk* v. *Temple George Associates, LLC*, supra, 82 Conn. App. 664–65.

plaintiff from the attack at issue." Id., 665. Thereafter, we granted the plaintiff's petition for certification to this court limited to the following question: "Did the Appellate Court properly affirm the decision of the trial court granting the defendants' motion for summary judgment?" *Monk* v. *Temple George Associates, LLC,* 270 Conn. 903, 853 A.2d 520 (2004).

The plaintiff claims that the Appellate Court improperly affirmed the judgment of the trial court on the basis of its determination that because the plaintiff was familiar with her assailant, the defendants did not owe the plaintiff a duty of reasonable care. Specifically, the plaintiff contends that the defendants *did* owe her a duty because: (1) such a determination is not inconsistent with public policy; and (2) creating an exception to duty in premises liability cases based on the relationship between a victim and her assailant is illogical. The plaintiff also asks this court to invoke its supervisory powers to consider whether the trial court properly determined that there is no genuine issue of material fact as to proximate cause. In response, the defendants contend that: (1) the Appellate Court's judgment was correct because public policy considerations do not support the imposition of liability on the defendants under the circumstances of the present case; (2) this court should not invoke its supervisory powers because the record is inadequate for review; and (3) the trial court properly concluded that there are no genuine issues of material fact because the alleged negligent lack of security was not the proximate cause of the attack. We agree with the plaintiff.

As a preliminary matter, we set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 548–49, 848 A.2d 352 (2004).

I

## WHETHER THE DEFENDANTS OWED THE PLAINTIFF A DUTY OF CARE

The test for determining legal duty is a two-pronged analysis that includes: (1) a determination of foreseeability; and (2) public policy analysis. *Jaworski* v. *Kiernan*, 241 Conn. 399, 406–407, 696 A.2d 332 (1997). The plaintiff claims that imposing such a duty does not offend public policy because creating an exception in cases where victims know their attackers is illogical. We agree, but before addressing policy concerns regarding the imposition of a duty of care on specific types of defendants, we must first determine under the foreseeability prong whether a duty existed according to law, absent other considerations.[7] We conclude that it did.

---

[7] We note that the Appellate Court specifically declined to address this issue because it was unnecessary to its resolution of the present case. See *Monk* v. *Temple George Associates, LLC*, supra, 82 Conn. App. 664 ("[w]e, however, need not address that argument under the first prong of the analysis concerning the existence of a duty if public policy requires that no legal duty be imposed on the defendants"). Because we are reversing the judgment of the Appellate Court and the satisfaction of both prongs of the *Jaworski* test is integral to our conclusion that the defendants owed the plaintiff a duty, we address this issue herein.

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. . . . The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . [In other words], would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" (Citations omitted; internal quotation marks omitted.) Id., 405.

In the present case, the defendants' lot was located in the nightclub area of New Haven, a major Connecticut city. The defendants conducted business during the evening hours, at a time when many people would be seeking parking for the purpose of attending the clubs in the surrounding area. According to Sullivan's report, "serious crimes had occurred in the vicinity prior to this incident . . . [and the] [d]efendants knew or should have known that such serious crimes occurred. The police department deployment for crowd control was another cue that should have alerted [the] defendants to the risk of personal injury or property damage to patrons' vehicles or persons. . . . [Moreover] [a]lthough lighting in the lot appeared to be adequate at the time of [Sullivan's] inspection, the obscured site lines from the street created an opportunity for someone to commit an assault out of the view of the police who were posted nearby."

It seems quite foreseecable that, under these circumstances, an attack on a patron of the premises *could* occur, whether spontaneously or as precipitated by an argument at one of the neighboring nightclubs. It also is probable that the presence of a parking attendant would have decreased the likelihood that such an attack would occur. Indeed, Sullivan makes these very conclusions in his report.

Additionally, the defendants' reliance on the fact that the attack was intentional and therefore constituted an intervening cause is unavailing because, in *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 609, 662 A.2d 753 (1995), this court: (1) affirmed a judgment against a parking garage owner on whose unattended premises a woman was murdered; and (2) expressly disavowed any intention to elevate the burden of proof in premises liability claims involving criminal or intentional acts beyond foreseeability.[8] One of the determining factors in our conclusion in *Stewart* that the murder was foreseeable was the history of criminal activity in and around the garage.[9] Id., 601. This is also a factor that Sullivan described and relied on in his report. Accordingly, it was reasonably foreseeable that a criminal assault of the general nature of the one perpetrated against the plaintiff in the present case might occur on the premises.

Foreseeability notwithstanding, it is well established that Connecticut courts will not impose a duty of care on the defendants if doing so would be inconsistent with public policy. The plaintiff claims that the Appellate Court's conclusion with respect to this issue; see footnote 6 of this opinion; was improper because: (1) a duty of care was imposed on a similarly situated parking

---

[8] For the purposes of *liability*, the defendants correctly point out that they must also have created or increased the risk of the harm that occurred to the plaintiff, and must have been a substantial factor in causing it. See 2 Restatement (Second), Torts § 442B, pp. 469–72 (1965). These, however, are matters of causation rather than duty, and are addressed in part II of this opinion.

[9] In *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 601, this court noted that "the store and its garage [were] located in a neighborhood of Stamford that is reputed for its high crime rate. The crimes committed in the area spanned the spectrum of violence from larceny and robbery to rape and murder. Within the ten months prior to [the victim's] death, over 1000 serious crimes were committed within an area of two blocks from the garage . . . [and the victim's] murder was not the first crime [although it *was* the first murder] to occur in Bloomingdale's garage." (Emphasis added.)

garage owner in *Stewart*; (2) the relationship between a plaintiff and her assailant does not affect duty; (3) imposing a duty of care on the defendants is not tantamount to strict liability because breach and causation must still be proven; (4) imposing a duty of care does not shift harm away from the intentional tortfeasor because liability can be coextensive; and (5) taking reasonable precautions to safeguard the lot likely *would* have served as a deterrent to the attack on the plaintiff. The defendants contend, in response, that the Appellate Court's conclusion was proper because shifting the cost of the attack to them would not benefit the goals of the tort compensation system.

The defendants' arguments on appeal largely are premised on the nature of the relationship between the plaintiff and her assailant, and the fact that the attack was not a random one. This is the primary distinction between the present case and *Stewart*, and a basis for the Appellate Court's opinion in the present case.[10] This is, however, a distinction without a difference because the imposition of duty, fundamentally, is not dependent on the existence or nonexistence of a relationship between an attacker and her victim, but on the nature of the relationship between a plaintiff and a defendant. See 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 25:05, pp. 25-7 through 25-8.

Similarly, the defendants' claims on appeal and the Appellate Court's conclusion in the present case misconstrue the scope of the duty owed to the plaintiff. The defendants, because of the nature of their relationship with the plaintiff, owed her a duty to exercise

___

[10] The Appellate Court made reference to "the unique circumstances of the attack . . . where a known attacker attacked the plaintiff because of a personal dispute that arose two years earlier"; *Monk* v. *Temple George Associates, LLC*, supra, 82 Conn. App. 664–65; to support its conclusion that "the defendants did not have a legal duty to protect the plaintiff from the attack at issue." Id., 665.

reasonable care, which is fundamentally different from an obligation to prevent harm from occurring on the premises. Presumably, exercising reasonable care would serve as a deterrent to crime. The *absolute prevention* of crime on the premises, however, is not a necessary condition to satisfying a duty of care; that obligation is fulfilled by exercising reasonable care. Imposing a duty of care is not, therefore, "tantamount to imposing strict liability on a parking lot owner or operator for any injury occurring on its property no matter what the circumstances"; *Monk* v. *Temple George Associates, LLC,* supra, 82 Conn. App. 664; because plaintiffs alleging negligence would still have to prove a breach of reasonable care in addition to causation. Moreover, imposing a duty of care on parking lot owners and operators does not, as alleged by the defendants, shift the cost away from a culpable party to one with little responsibility for the eventuality because: (1) liability can be coextensive; and (2) premises owners are only culpable if they fail to exercise reasonable care.

We recognize that "[i]n considering whether public policy suggests the imposition of a duty, we . . . consider the following four factors: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." (Internal quotation marks omitted.) Id., 670 (*Bishop, J.,* dissenting), citing *Murillo* v. *Seymour Ambulance Assn., Inc.,* 264 Conn. 474, 480, 823 A.2d 1202 (2003). We apply these four factors and conclude that imposing a duty of care on the defendants under the circumstances of the present case is not inconsistent with public policy.

Assuming that the activity in question is parking in the defendants' lot, the first factor, the participants'

expectations, supports the imposition of a duty. Considering that the defendants' lot is characterized by: (1) an attendant collecting money at the entrance; (2) a sign warning that parking is forbidden when the lot is unattended; and (3) a location next to a series of nightclubs that, in Connecticut, close during the early hours of the morning; it seems likely that a business invitee reasonably would expect, at a minimum, that the lot stay open for the duration of the time that the surrounding entertainment venues are open, and that it be attended at all times so as to offer some measure of safety to customers and their vehicles. This is particularly so when the lot is located in a high crime area. Similarly, it seems logical that lot owners engaging in such an activity for profit reasonably would expect to provide some measure of security for their paying customers.

The second factor, encouraging participation in the activity, also militates in favor of imposing a duty. As a matter of public policy, it is desirable to promote business activity in Connecticut cities, and to encourage citizens to support local enterprises. The availability of parking has a direct impact on this. By extension, it is, therefore, in the interest of public policy to encourage parking lot owners to conduct business. Although imposing a duty of reasonable care on lot owners would increase their cost of doing business, which likely would be passed on to customers, it is unlikely to dampen business. To the contrary, the benefits of reasonable security probably would outweigh the burden of a marginal increase in parking costs for most customers, and more people would be likely to drive into the city if the parking lots located there were safer.

The third factor, which is the likelihood that imposing such a duty would avoid increased litigation, is an admittedly weaker factor; it does not, however, compel the conclusion that imposing a duty of care on the

defendants is inconsistent with public policy. It is easy to fathom how affirmatively imposing a duty on the defendants in the present case could encourage similarly situated future plaintiffs to litigate on the same grounds; this is true *anytime* a court establishes a potential ground for recovery. The purpose of doing so in the present case is, however, to protect customers by encouraging businesses to take reasonable care to decrease the likelihood of crime occurring on their premises. If, in fact, imposing a duty of care has that result, litigation is unlikely to increase; it may even decrease. On the other hand, even if imposing a duty has no significant effect on the incidence of crime, litigation still may not increase, at least not substantially. Because taking reasonable care is not the same as ensuring the safety of customers, legal actions alleging only injury on certain premises, as opposed to the failure of a premises owner or operator to take reasonable precautions, likely will be dismissed in the absence of negligence.

Finally, the fourth factor, concerning the decisions of other jurisdictions, is not particularly helpful because there are multiple ways in which our sister states handle the question of duty with respect to premises liability. Some jurisdictions require prior similar incidents to have occurred *on or in the immediate vicinity of the premises* for lot owners to be treated as having been on notice. See *Selektor* v. *Smiles Parking Co.*, 210 App. Div. 2d 18, 618 N.Y.S.2d 813 (1994) ("[i]n the absence of any evidence that defendants had . . . knowledge of criminal activity inside or in the direct vicinity of the parking lot, the . . . murder inside the parking lot was not reasonably foreseeable"). Other jurisdictions follow a more expansive view of foreseeability, associating it with certain businesses that are, by their very nature, more conducive to crime. *Martinko* v. *H-N-W Associates*, 393 N.W.2d 320, 322 (Iowa 1986) ("other factors

than past experience may establish foreseeability, for example, the place and character of the business"). Still other jurisdictions adopt a scaled back version of a totality of the circumstances rule that looks beyond a particular premises to the surrounding area and balances the foreseeability of harm against the burden of security measures. *Wiener* v. *Southcoast Childcare Centers, Inc.*, 32 Cal. 4th 1138, 1147, 88 P.3d 517, 12 Cal. Rptr. 615 (2004) ("decision to impose a duty of care to protect against criminal assaults requires balancing the foreseeability of the harm against the burden of the duty to be imposed").

We conclude that a totality of the circumstances rule, although more expansive than the other aforementioned approaches, is most consistent with the public policy goals of our legal system, as well as the general tenor of our jurisprudence.[11] The fact, therefore, that there is no evidence of a prior similar incident on the defendants' premises, although significant to foreseeability, is not dispositive. As indicated previously in this opinion, the plaintiff has provided ample evidence about crimes in the immediate vicinity to suggest that such a criminal attack in the defendants' lot was foreseeable. Even if we were to adopt a balancing test, the burden on the defendants of maintaining adequate

---

[11] We want to encourage parking lot owners and managers to exercise reasonable care in their dealings with customers immediately as a matter of sound public policy, instead of hiding behind a bright line rule and waiting for the first criminal act to occur on their premises. Although a bright line rule would promote judicial expediency, this concern is outweighed in the present instance by the policy interest in: (1) encouraging businesses to take reasonable measures for the safety of their customers; and (2) assigning liability as accurately as possible to those parties that reasonably may foresee harm on their premises. We do not consider attacks perpetrated in the vicinity of one's premises to be significantly different for the purposes of foreseeability than attacks committed directly on one's premises, other things being equal. By contrast, the extent to which a criminal act was reasonably foreseeable to a particular plaintiff in any given case is a question of facts and circumstances.

lighting and ensuring that the attendant collecting money remains at the lot for the duration of the time that surrounding venues are open is outweighed by the foreseeability of a criminal attack on the premises in the absence of these measures, considering the character of the area. As there is no compelling reason grounded in public policy to shield the defendants from their duty, we conclude that the defendants owed the plaintiff a reasonable duty of care.

## II

## WHETHER THIS COURT SHOULD EXERCISE ITS SUPERVISORY POWERS TO DETERMINE WHETHER THERE IS A GENUINE ISSUE OF MATERIAL FACT RESPECTING THE ISSUE OF CAUSATION

The plaintiff additionally requests that we invoke our supervisory powers to consider whether the trial court improperly concluded that there was no genuine issue of fact as to the defendants' liability, an issue left undecided by the Appellate Court. The defendants, however, contend that the record is inadequate for such review because the plaintiff failed to file a revised designation of specific pleadings or a new docketing statement, as required by Practice Book § 63-4 (a) (2) and (4), and also failed to include complete transcripts of the testimony of the parties and witnesses. We disagree with the defendants.

"[P]ursuant to Practice Book § 60-2 . . . the exercise of our supervisory authority . . . is appropriate when the record is adequate to allow review of the merits and the parties have briefed the issues." (Citations omitted; internal quotation marks omitted.) *State* v. *James*, 261 Conn. 395, 410–11, 802 A.2d 820 (2002). In the present case, the record is adequate for our review of the trial court's grant of summary judgment because it contains copies of the pleadings, affidavits

and other proof submitted to the trial court, upon which the summary judgment decision was based. Additionally, both parties have briefed the issue. Although the defendant correctly points out several procedural lapses, pursuant to Practice Book § 60-3,[12] "[f]or nonjurisdictional issues . . . the court may suspend the requirements or provisions of any of [the Practice Book] rules in a particular case . . . on its own motion . . . ." (Internal quotation marks omitted.) *Ramos* v. *Commissioner of Correction*, 248 Conn. 52, 60–61, 727 A.2d 213 (1999). Because we conclude that the record is adequate for our review of this issue, we will consider its merits.[13]

The plaintiff claims that the trial court improperly granted the defendants' summary judgment motion because there exists, at the very least, a genuine issue of material fact as to whether the defendants' alleged negligence proximately caused the attack. In support of her contention, the plaintiff cites Sullivan's report, in which he reviewed the crime statistics of the region, as well as the shape and location of the lot itself, and concluded that the attack on the plaintiff was both foreseeable and likely preventable. In response, the defendants contend that their alleged negligence was not the proximate cause of the attack because the suggestion that an attendant would have prevented the attack is purely speculative, particularly in light of the

---

[12] Practice Book § 60-3 provides: "In the interest of expediting decision, or for other good cause shown, the court in which the appeal is pending may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its own motion and may order proceedings in accordance with its direction."

[13] We note that this issue was raised in the Appellate Court so at the very least, we would be reversing the Appellate Court and sending the case back for the Appellate Court to decide the causation issue. Under these circumstances, because the issue will get reviewed by *some* court, in the interests of judicial economy we will not parse this case into two separate appeals.

fact that Denson's attack seemed premeditated and undeterred by police officers in the vicinity, who were standing outside of the club. Viewing the evidence, as we must, in a light most favorable to the plaintiff, we conclude that there *is* a genuine issue of material fact as to the defendants' liability in the present case.

The trial court's determination that the present case lacked genuine issues of material fact was based on its improper association of: (1) lack of duty with the nature of the relationship between the plaintiff and Denson; and (2) lack of notice with the absence of a prior attack on the premises. We have, however, rejected the propositions that: (1) a victim's relationship with her assailant can bar liability for premises owners; and (2) notice requires the occurrence of a prior similar act *on the premises*, as opposed to one block away. See part I of this opinion. Accordingly, the relevant question is whether, assuming a breach of duty on the part of the defendants, a fact finder reasonably *could* find that the defendants' conduct was a proximate cause of the attack on the plaintiff. We answer that question in the affirmative.

"[P]roximate cause [is] defined as an actual cause that is a substantial factor in the resulting harm . . . . [T]he inquiry fundamental to all proximate cause questions . . . [is] whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Citations omitted; internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 321, 852 A.2d 703 (2004). Additionally, we note that "a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, except where the harm is intentionally caused by the third person *and* is not within the scope of the risk created by the defendant's conduct."

(Emphasis added; internal quotation marks omitted.) *Craig* v. *Driscoll*, 262 Conn. 312, 332, 813 A.2d 1003 (2003), citing 2 Restatement (Second), Torts § 442B (1965). Therefore, the liability of the defendants depends on the foreseeability of the plaintiff's attack as well as the extent to which the defendants' alleged negligence was a substantial factor in causing the plaintiff's injuries.

Sullivan's report regarding crime statistics in New Haven and the area surrounding the parking lot suggests that the defendants had, at the very least, a constructive awareness of the potential for violent crime in the vicinity of their property. They, however, dispute the plaintiff's general description and characterization of the area. It is, therefore, a genuine issue of material fact as to whether the attack was foreseeable.

Similarly, there appears to be a genuine issue of fact regarding the extent to which the defendants' alleged negligence in failing to supervise the lot properly was a substantial factor in causing the plaintiff's injuries from the attack. In his report, Sullivan opines that "[a] parking attendant would have provided a deterrent to criminal activity on the premises." The defendants dispute this contention and claim that it is too speculative with respect to the impact an attendant would have had on the plaintiff's injuries.

In a similar case, however, *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 600, wherein an estate administrator filed an action against a parking garage owner for the murder of a woman on its premises by a third party while the garage was unattended, this court affirmed the judgment in favor of the plaintiff, concluding that the trial court properly denied the defendant's motion for a directed verdict on the basis of proximate cause. Id., 613. In so concluding, this court implicitly affirmed the trial court's necessary finding

that the garage's lack of supervision was a substantial factor in the plaintiff's death. Id. The impact that an attendant would have had on preventing the plaintiff's injuries in the present case is no more speculative than in *Stewart*. Moreover, the cases that the defendants have cited in support of their contention are distinguishable from the present case.[14] Accordingly, the trial court improperly concluded that "the intentional act of Denson must lead inescapably to the conclusion that [the attack was unforeseeable, and] the plaintiff could not, as a matter of law, prove that the defendants' negligence was a substantial factor in producing her injuries."

[14] In *Cardona* v. *Valentin*, 160 Conn. 18, 25, 273 A.2d 697 (1970), this court held that the owner of a poolroom was not liable for the fatal stabbing of a customer by an employee because the alleged inadequate security was not a proximate cause of the murder. This case is distinguishable from the present one both on the facts and the standard of review. Unlike the parking lot in the present case, the poolroom in *Cardona was* supervised by an employee; the issue was whether one employee was sufficient. Id., 23–24. Additionally, the trial court in *Cardona* made findings of fact with respect to proximate cause, requiring this court to let the decision stand unless we concluded that the trial court's conclusions were "legally or logically inconsistent with the facts found or . . . involve[d] the application of some erroneous rule of law material to the case." Id., 22. By contrast, in the present case, there was no fact finding at the trial court level and our review of the trial court's conclusions is plenary.

Similarly, the present case is distinguishable from *Doe* v. *Manheimer*, 212 Conn. 748, 769–70, 563 A.2d 699 (1989), overruled in part, *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 608, wherein this court held that a landowner could not be liable in tort for damages for the rape of a pedestrian by a third party behind overgrown brush on the landowner's property that shielded the area from view from the sidewalk. We concluded that the harm of rape could not be understood as being within the scope of risk created by the defendant's conduct in not maintaining overgrown brush because "[a] prudent person who owns land abutting a public way would not, in our opinion, infer from his ordinary experience the possibility that overgrown vegetation . . . [would] prompt or catalyze a violent criminal act." *Doe* v. *Manheimer*, supra, 762. The same cannot be said of the circumstances in the present case, wherein the defendants left a paid parking lot in an arguably high crime neighborhood unsupervised during the evening hours. One could easily and logically infer that the risk that such conduct creates is the possibility of violence on the premises.

*Monk* v. *Temple George Associates, LLC,* supra, 82 Conn. App. 678 (*Bishop, J.,* dissenting).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court, and to remand the case to the trial court for further proceedings according to law.

In this opinion the other justices concurred.