******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT LAWRENCE ET AL. *v.* O AND G
INDUSTRIES, INC., ET AL.
(SC 19330)

CAROLYN BEAMER ET AL. *v.* O AND G
INDUSTRIES, INC., ET AL.
(SC 19331)

Rogers, C. J., and Palmer, Zarella, Espinosa, Robinson and Vertefeuille, Js.

*Argued September 16—officially released November 24, 2015*

*Joseph M. Barnes*, with whom, on the brief, was *Robert I. Reardon, Jr.*, for the appellants (plaintiff Dean Novak et al. in the first case, named plaintiff et al. in the second case).

*Proloy K. Das*, with whom were *John W. Bradley, Michael S. Lynch, Peter J. Ponziani, William J. Scully,*

and, on the brief, *Robbie T. Gerrick, Christopher J. Sochacki, David E. Rosengren, Frank Sherer, Anthony J. Natale, Robert L. Joyce, Thomas M. McKeon* and *Joseph B. Burns*, for the appellees (named defendant et al. in both cases).

*Opinion*

ROBINSON, J. The sole issue in this appeal is whether construction companies owe a duty of care to workers employed on a job site who suffer purely economic harm, namely lost wages, as a result of an accident caused by the construction companies' negligence. The plaintiffs in these two civil actions[1] were gainfully employed in numerous trades at the Kleen Energy power plant (power plant) construction project in the city of Middletown. The plaintiffs brought their claims against the defendants, which include the general contractor of the construction project, the named defendant, O & G Industries, Inc.,[2] alleging that their negligence caused a gas explosion that resulted in the termination of the plaintiffs' gainful employment, causing them to suffer economic loss in the form of past and future lost wages. The plaintiffs now appeal[3] from the judgments of the trial court rendered following its grant of the defendants' motions to strike the applicable counts of their complaints. On appeal, the plaintiffs claim that the trial court improperly concluded that the defendants did not owe them a duty of care on the ground that "public policy is not served by expanding the defendants' liability to purely economic claims such as those asserted by the plaintiffs." We disagree with the plaintiffs and, accordingly, affirm the judgments of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiffs were gainfully employed in various trades at the power plant construction site in Middletown. Each defendant was a contractor or subcontractor actively involved in the construction and start-up of the power plant. On February 7, 2010, a gas explosion occurred. The plaintiffs then brought these actions against the defendants, alleging that their negligence caused the explosion, which resulted in the termination of the plaintiffs' gainful employment at the power plant site and economic losses in the form of past and future lost wages. Following the transfer of the cases from the judicial district of Middlesex to the Complex Litigation Docket in the judicial district of Hartford, the defendants moved to strike the economic loss counts of the operative complaints.[4]

The trial court, *Bright, J.*,[5] granted the defendants' motions to strike, concluding that the plaintiffs had "failed to sufficiently allege that the defendants owed them a duty of care" necessary to sustain their negligence claims.[6] Noting that it was undisputed that "foreseeability is not at issue" with respect to the duty analysis, the trial court turned to "whether recovery should be permitted as a matter of public policy" under the well established four factor test articulated in, for example, *Jarmie* v. *Troncale*, 306 Conn. 578, 603, 50 A.3d 802 (2012). Relying on, inter alia, this court's deci-

sions in *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 650 A.2d 153 (1994), and *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven Railroad Co.*, 25 Conn. 265 (1856), and the Superior Court's decision in *DeVillegas* v. *Quality Roofing, Inc.*, Superior Court, judicial district of Fairfield, Docket No. CV-92-0294190-S (November 30, 1993) (10 Conn. L. Rptr. 487), the trial court concluded: "For more than 150 years the law in Connecticut, and elsewhere, has limited tort liability to cases involving physical harm to person or property. Departing from this requirement would undermine reasonable expectations built on this long held understanding of the law, and would create an endless ripple of liabilities arising from the defendants' conduct. Public policy is not served by so expanding the defendants' liability to purely economic claims such as those asserted by the plaintiff[s]." Subsequently, the trial court, *Sheridan, J.*, granted the plaintiffs' motions for judgment in accordance with Judge Bright's memoranda of decision granting the defendants' motions to strike. This consolidated appeal followed. See footnote 3 of this opinion.

On appeal, the plaintiffs claim that the trial court improperly concluded that the defendants did not owe them a duty of care. In particular, the plaintiffs argue that the trial court improperly determined that "public policy is not served by expanding the defendants' liability to purely economic claims such as those asserted by the plaintiffs." The plaintiffs rely on, inter alia, *Ins. Co. of North America* v. *Manchester*, 17 F. Supp. 2d 81 (D. Conn. 1998), and *A.M. Rizzo Contractors, Inc.* v. *J. William Foley, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X05-CV-05-106004577-S (January 13, 2011) (51 Conn. L. Rptr. 542), and contend that their losses were reasonably foreseeable and not remote, thus permitting them to move forward with negligence claims seeking purely economic damages despite the absence of privity of contract, physical injury, or property damage. The plaintiffs further argue that this court's decision in *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 381, is distinguishable, and contend that the Superior Court's decision in *DeVillegas*, which was followed by the trial court in the present case, is inconsistent with the greater weight of Superior Court authority rejecting the use of the economic loss doctrine to bar tort claims seeking purely economic damages. Instead, the plaintiffs urge us to follow the Superior Court's decision in *Reiner & Reiner, P.C.* v. *Connecticut Natural Gas Corp.*, Superior Court, judicial district of Hartford-New Britain, Docket No. CV-95-0551260-S (December 12, 1995), which denied a motion to strike tort claims brought by a law firm seeking purely economic damages caused by a gas leak near its office, despite the lack of physical injury, property damage, or privity of contract between the parties.

In response, the defendants rely on, inter alia, *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 381, and contend that the plaintiffs' arguments improperly fail to consider that, in addition to foreseeability, "a court should consider public policy before imposing a legal duty."[7] Applying the four factor public policy test first articulated in *Jaworski* v. *Kiernan*, 241 Conn. 399, 404, 696 A.2d 332 (1997), and utilized by the trial court in the present case, the defendants then argue that they owed no duty to the plaintiffs, given the lack of privity of contract, physical injury, or property damage, because: (1) given existing Connecticut case law, such as *DeVillegas*, "there is no expectation that the defendants would be liable to any and all workers at the [power plant] who may have lost wages as a result of the temporary closing of the plant"; (2) the safety factor was not at issue because "gas blows are presumably a necessary function to properly operate this type of power plant and not an optional activity that the rule of law could either encourage or discourage"; (3) "recognizing a negligence cause of action in this case would lead to potentially limitless liability," and "require the [trial] court to draw arbitrary limitations between individuals or businesses who in fact suffered economically because construction temporarily stopped at the [power] plant"; and (4) the majority of state and federal courts addressing this issue "have held that absent physical injury to person or property, a plaintiff may not recover in tort for purely economic loss." We agree with the defendants, and conclude that public policy bars the imposition upon them of a duty of care to the plaintiffs in this case.[8]

"We begin by setting out the well established standard of review in an appeal from the granting of a motion to strike. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling . . . is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342, 350, 71 A.3d 480 (2013).

"Our analysis of the [plaintiffs'] claim is governed by

the following principles. A cause of action in negligence is comprised of four elements: duty; breach of that duty; causation; and actual injury. . . . Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier of fact consider whether that duty was breached. . . .

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury [that] resulted was foreseeable . . . . [T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Citations omitted; internal quotation marks omitted.) *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 328–29, 107 A.3d 381 (2015).

As the trial court observed, it is undisputed that the plaintiffs' economic losses were a foreseeable result of the defendants' claimed negligence. This does not, however, "mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself . . . but is only an expression of the sum total of those considerations of policy [that] lead the law to say that the plaintiff is entitled to protection. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results. . . . [I]n considering whether public policy suggests the imposition of a duty, we . . . consider the following four factors: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions. . . . [This] totality of the circumstances rule . . . is most consistent with the public

policy goals of our legal system, as well as the general tenor of our [tort] jurisprudence." (Citations omitted; internal quotation marks omitted.) Id., 336–37; see also, e.g., *Jarmie* v. *Troncale*, supra, 306 Conn. 603–22 (extensive application of four factor test); *Jaworski* v. *Kiernan*, supra, 241 Conn. 408 (first articulating four factor test).

Beginning with the first factor, namely, the "normal expectations of the participants in the activity under review"; *Ruiz* v. *Victory Properties, LLC*, supra, 315 Conn. 337; we find instructive Connecticut's existing body of common law and statutory law relating to this issue. See, e.g., id., 337–38 (considering existing common-law principles and statutory requirements in determining whether apartment building landlord owed duty to keep yard clear of debris that could be thrown by children); *Greenwald* v. *Van Handel*, 311 Conn. 370, 376–77, 88 A.3d 467 (2014) (noting this court's recognition in equity and contractual contexts of certain "common-law maxims" before considering whether to extend them to professional negligence claim against therapist arising from plaintiff's arrest for possession of child pornography); *Jarmie* v. *Troncale*, supra, 306 Conn. 603–605 (reviewing Connecticut medical malpractice case law and statutes governing health-care providers in determining whether physician owed plaintiff, who was injured in automobile accident with physician's patient, common-law duty to inform patient of driving risks associated with her medical condition).

The seminal Connecticut case in the area of pure economic loss is *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven Railroad Co.*, supra, 25 Conn. 277–78, wherein this court held that a life insurance company could not recover life insurance benefits that it had paid by bringing a direct action against a railroad company whose negligence had caused the death of its insured.[9] The court observed that the "single question is, whether a plaintiff can successfully claim a legal injury to himself from another, because the latter has injured a third person in such a manner that the plaintiffs' contract liabilities are thereby affected. *An individual slanders a merchant and ruins his business; is the* [wrongdoer] *liable to all the persons, who, in consequence of their relations by contract to the bankrupt, can be clearly shown to have been damnified by the bankruptcy?* Can a fire insurance company, who have been subjected to loss by the burning of a building, resort to the responsible author of the injury, who had no design of affecting their interest, in their own name and right? *Such are the complications of human affairs, so endless and far-reaching the mutual promises of man to man, in business and in matters of money and property, that rarely is a death produced by human agency, which does not affect the pecuniary interest of those to whom the deceased was bound by contract.* To open the door of legal redress to wrongs

received through the mere voluntary and factitious relation of a contractor with the immediate subject of the injury, would be to encourage collusion and extravagant contracts between men, by which the death of either through the involuntary default of others, *might be made a source of splendid profits to the other, and would also invite a system of litigation more portentous than our jurisprudence has yet known.*"[10] (Emphasis added.) Id., 274–75. The court ultimately held that, "in the absence of any privity of contract between the plaintiffs and [the] defendants, and of any direct obligation of the latter to the former growing out of the contract or relation between the insured and the defendants, the loss of the plaintiffs, although due to the acts of the railroad company, being brought home to the insurers only through their artificial relation of contractors with the party who was the immediate subject of the wrong done by the railroad company, *was a remote and indirect consequence of the misconduct of the defendants, and not actionable.*"[11] (Emphasis added.) Id., 276–77. *Connecticut Mutual Life Ins. Co.* has come to embody the proposition that, under Connecticut law, "where one is injured by the wrongful act of another, and others are indirectly and consequentially injured, but not by reason of any natural or legal relation, the injuries of the latter are deemed too remote to constitute a cause of action."[12] *Gregory* v. *Brooks*, 35 Conn. 437, 446 (1868); see also id., 447 (discussing exception for fraudulent and malicious acts intended to injure plaintiff).

A much more recent decision from this court rejecting claims of pure economic loss is *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 382, which considered "whether an employer may maintain a [common-law] negligence action against a third party tortfeasor to recover for economic loss in the form of increased workers' compensation premiums and lost dividends arising out of the tortfeasor's negligence." This court concluded that a general contractor did not owe a duty of care to the plaintiff, a construction company. Id., 383. In so concluding, the court followed numerous sister state decisions and the Superior Court decision in *Steele* v. *J & S Metals, Inc.*, 32 Conn. Supp. 17, 335 A.2d 629 (1974), and observed that beyond the foreseeability of the harm suffered by the plaintiff, the court "must proceed to make the further policy determination of whether [the general contractor's] responsibility for its negligent conduct should extend to these particular consequences and this particular plaintiff. It is irrelevant to this determination whether the plaintiff's damages flowed from the accident itself or from the resulting injuries to its employee. We fail to see the distinction. *What is relevant, rather, is the measure of attenuation between* [*the general contractor's*] *conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand.* [*Steele*] con-

cluded that when a defendant injures a plaintiff's employee, the nexus between that act and the plaintiff and its lost profits is simply too tenuous to impose liability for such collateral consequences. The factors in the present case are nearly identical. The [general contractor] is a third party who caused physical injury, not to the plaintiff itself, but to the plaintiff's employee. Moreover, the alleged damages to the plaintiff that resulted from the physical injury to its employee are purely economic in nature. In the absence of a controlling statute or overriding public policy consideration, we conclude that the economic harm to the plaintiff in the form of increased premiums and lost dividends is simply too remote to be chargeable to the [general contractor] third party tortfeasor . . . ." (Emphasis added; footnote omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 387–88.

With respect to the parties' expectations, we also find instructive *DeVillegas* v. *Quality Roofing, Inc.*, supra, 10 Conn. L. Rptr. 487, a decision relied upon by the trial court in the present case. In *DeVillegas*, a correction officer sought to recover lost overtime pay and other purely economic damages incurred when a roofing contractor's negligence caused a fire that damaged the facility where he worked. In striking the officer's claim against the contractors, the Superior Court reviewed numerous decisions of other jurisdictions and cited, inter alia, *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven Railroad Co.*, supra, 25 Conn. 276–77, for the proposition that the "long established common law rule in this state is that in the absence of privity of contract between the plaintiff and [the] defendant, or of an injury to the plaintiff's person or property, a plaintiff may not recover in negligence for a purely economic loss." *DeVillegas* v. *Quality Roofing, Inc.*, supra, 489. Accordingly, with no allegation to that effect, the Superior Court struck the correction officer's negligence complaint against the roofing contractor.[13] Id.

Beyond the case law, we also note the existence of a statutory remedy for persons such as the plaintiffs who become unemployed through no fault of their own, namely, unemployment insurance benefits pursuant to General Statutes § 31-222 et seq. The ready availability of unemployment insurance benefits to mitigate the harm caused by unemployment resulting from events such as the power plant explosion significantly informs the ordinary expectations of the parties, particularly given the at-will nature of employment in Connecticut. See *Jarmie* v. *Troncale*, supra, 306 Conn. 604–605 (noting ordinary expectation of persons injured in automobile accident to recover from their own health or motor vehicle insurance policies when recovery unavailable from other driver). Accordingly, we conclude that the reasonable expectations of the participants, as informed by existing Connecticut law, favor the defen-

dants in the present case.

Because they are analytically related, we consider together the second and third factors, namely, "the public policy of encouraging participation in the activity, while weighing the safety of the participants," and "the avoidance of increased litigation . . . ." (Internal quotation marks omitted.) *Ruiz* v. *Victory Properties, LLC,* supra, 315 Conn. 337. "It is easy to fathom how affirmatively imposing a duty on the defendants in the present case could encourage similarly situated future plaintiffs to litigate on the same grounds; this is true anytime a court establishes a potential ground for recovery." (Emphasis omitted.) *Monk* v. *Temple George Associates, LLC,* 273 Conn. 108, 120, 869 A.2d 179 (2005). Thus, we observe that expanding the defendants' liability in this industrial accident context to include the purely economic damages suffered by other workers on site appears likely to increase the pool of potential claimants greatly. At the same time, the recognition of such a duty fails to provide a corresponding increase in safety,[14] given that companies like the defendants are subject to extensive state and federal regulation, and already may be held civilly liable to a wide variety of parties who may suffer personal injury or property damage as a result of their negligence in the industrial or construction context. See *Lodge* v. *Arett Sales Corp.,* 246 Conn. 563, 581–82, 717 A.2d 215 (1998) (alarm company owed no duty to firefighters injured when fire truck crashed because of brake failure en route to false alarm, given that, inter alia "[a]larm companies already have adequate incentives to avoid negligent conduct that causes false alarms in that they may be held liable for the reasonably foreseeable consequences of their negligent conduct"); see also, e.g., *Ruiz* v. *Victory Properties, LLC,* supra, 340 ("rather than unnecessarily and unwisely increasing litigation, imposing a duty in this case will likely prompt landlords to act more responsibly toward their tenants in the interest of preventing foreseeable harm caused by unsafe conditions in areas where tenants are known to recreate or otherwise congregate"); *Monk* v. *Temple George Associates, LLC,* supra, 119–20 (attributing duty of care to parking facility owner with respect to patron injured by criminal act would "protect customers by encouraging businesses to take reasonable care to decrease the likelihood of crime occurring on their premises" noting that "[i]f, in fact, imposing a duty of care has that result," litigation was "unlikely to increase" and "may even decrease").

The probability that an increase in litigation will not be offset by an increase in safety gives us particular pause with respect to recognizing a duty on large construction sites like that of the power plant, where the relationship between the affected workers and the tortfeasors may be quite attenuated. See *Jarmie* v. *Troncale,* supra, 306 Conn. 614 ("[t]he proposed duty also would result in increased litigation because it would

open the door to an entirely new category of claims against health care providers, not only in the present context, but in the context of other treatment decisions that might indirectly cause injury to third parties, thereby greatly expanding the liability of health care providers and creating an additional burden on the courts"). Further, the nature of the damages at issue presents difficulties in proof that would vary by individual employees' employment circumstances, meaning that recognizing a duty in the context of this case also evokes "fears of flooding the courts with spurious and fraudulent claims; problems of proof of the damage suffered; exposing [potential defendants] to an endless number of claims; and economic burdens on industry." (Internal quotation marks omitted.) *Perodeau* v. *Hartford*, 259 Conn. 729, 758, 792 A.2d 752 (2002). Accordingly, we conclude that the second and third factors favor the defendants.

Finally, turning to the decisions of other jurisdictions, the cases revealed by the parties' briefs and our independent research indicate that federal and state courts have rejected nearly all claims like those brought by the plaintiffs in the present case, seeking wages lost as a result of a third party's negligence, in the absence of privity of contract, personal injury, or property damage. These courts have applied the common-law economic loss doctrine[15] articulated by, for example, *Robins Dry Dock & Repair Co.* v. *Flint*, 275 U.S. 303, 48 S. Ct. 134, 72 L. Ed. 290 (1927),[16] to bar such claims. See *Lanier* v. *Norfolk Southern Corp.*, 256 Fed. Appx. 629, 633 (4th Cir. 2007) (applying South Carolina law to preclude employees' claims for lost wages when they were laid off after their employer's plant was damaged by chlorine gas leak resulting from train derailment); *Boat Dianne Lynn, Inc.* v. *C & N Fishing Corp.*, 729 F. Supp. 1400, 1401 (D. Me. 1989) (claims of commercial fishing crew members who "seek recovery for earnings lost during the period in which their vessel was undergoing repair as a result of [a] collision with [another vessel]"); *Aguilar* v. *RP MRP Washington Harbour, LLC*, 98 A.3d 979, 985–86 (D.C. 2014) (numerous retail and service employees' claims for lost wages when their employers' businesses closed as result of mall operator's failure to deploy flood wall system); *Willis* v. *Georgia Northern Railway Co.*, 169 Ga. App. 743, 744, 314 S.E.2d 919 (1984) (employees' claims for lost wages when their employer's plant closed after being struck by runaway train cars); *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 198–201, 680 N.E.2d 265 (1997) (claims for economic damages of lost wages, lost revenues, sales, and profits arising from business closures caused by flooding of underground freight tunnel system); *Local Joint Executive Board of Las Vegas*, *Culinary Workers Union, Local No. 226* v. *Stern*, 98 Nev. 409, 410–11, 651 P.2d 637 (1982) (per curiam) (hotel employees' claims for lost wages arising from hotel fire caused by negligent

design and construction); *Stevenson* v. *East Ohio Gas Co.*, 73 N.E.2d 200, 201–204 (Ohio App. 1946) (employee's claims for lost wages when gas explosion caused by defendant kept him from attending work for eight days); *Aikens* v. *Baltimore & Ohio Railroad Co.*, 348 Pa. Super. 17, 21–22, 501 A.2d 277 (1985) (employees' claims for lost wages when their employer's plant was damaged after train derailment); *United Textile Workers of America, AFL-CIO* v. *Lear Siegler Seating Corp.*, 825 S.W.2d 83, 83–86 (Tenn. App. 1990) (employees' claims for lost wages caused by temporary closure of industrial park following propane leak), appeal denied (Tenn. 1992); *Rodriquez* v. *Carson*, 519 S.W.2d 214, 216–17 (Tex. Civ. App.) (truck driver's negligence claim for lost wages against defendants who negligently destroyed truck owned by his employer), writ refused (Tex. 1975).

Courts that reject claims similar to those in the present case under the economic loss doctrine reason that the "primary purpose of the rule is to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable."[17] *Local Joint Executive Board of Las Vegas, Culinary Workers Union, Local No. 226* v. *Stern*, supra, 98 Nev. 411. They posit that the "foreseeability of economic loss, even when modified by other factors, is a standard that sweeps too broadly in a professional or commercial context, portending liability that is socially harmful in its potential scope and uncertainty." Id.; see also, e.g., *In re Chicago Flood Litigation*, supra, 176 Ill. 2d 198 (observing that "the economic consequences of any single accident are virtually limitless" and that "[i]f [the] defendants were held liable for every economic effect of their negligence, they would face virtually uninsurable risks far out of proportion to their culpability, and far greater than is necessary to encourage potential tort defendants to exercise care in their endeavors" [internal quotation marks omitted]). Thus, we conclude that the decisions of the federal courts and our sister states favor the defendants in this case.[18]

"While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." (Internal quotation marks omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 386. "In every case in which a defendant's negligent conduct may be remotely related to a plaintiff's harm, the courts must draw a line, beyond which the law will not impose legal liability." *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 578. Thus, having reviewed the numerous public policy factors as set forth in *Jaworski* v. *Kiernan*, supra, 241

Conn. 404, we conclude that the defendants, whose alleged negligence caused the explosion at the power plant, did not owe a duty of care to the plaintiffs, who were employees that sustained only economic losses as a result of the explosion. The decisions of the vast majority of other jurisdictions precluding recovery in similar situations are consistent with the duty analysis employed in this court's prior cases, notably, *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven Railroad Co.*, supra, 25 Conn. 265, and *RK Constructors*, *Inc.* v. *Fusco Corp.*, supra, 387–88, particularly given the "measure of attenuation"; id., 387; between the defendants' alleged negligence and the economic injury suffered by the plaintiffs. Further, recognizing a duty of care in this factual context appears likely to result in a significant increase in litigation, without a corresponding increase in the safe operation of industrial sites such as the power plant. The trial court, therefore, properly granted the defendants' motions to strike.

The judgments are affirmed.

In this opinion the other justices concurred.

[1] There are six plaintiffs in the first action: Barrington Kelly, Robert Lawrence, Dean Novak, Carlton Pruitt, Daniel Rogers, and Malissa Valentin. The claims made by Lawrence and Kelly have been withdrawn and are not at issue in the present appeal. Consequently, the appeal pertaining to the first action, Docket No. SC 19330, concerns only the claims made by the four remaining plaintiffs.

Following several amendments to the original complaint, there are forty-one plaintiffs in the second action: Samuel Adamo, Thomas Alferi, John Apes, Judith Baldwin, Carolyn Beamer, Joshua Beamer, Michael Blood, Christopher Capozzi, Brian Chapman, Robert Colicchio, Ross Cowan, John P. Crawford IV, David Davis, Edouard Edouard, Thomas Fusco, Peter Gallo, Carl Garbe, Joseph Janowski, Kenneth Lacus, Ronald Linquist, Michael Marr, Joseph Marselle, Shawn Maurer, Kirk Menzano, Thomas Menzano, Gregory Messier, Michael Mulcahey, Steven Navikonis, Paul Osborne, Abraham Pabon, Stephen Peterson, Brent Petroka, Peter Porter, Brian Regan, Richard Ritson, Cosmo Seaberg, Thomas Seifert, Walter Seifert, David Smart, Benjamin Wells, and Raymond Williams. The claims made by Brent Petroka concerned property damage and are not at issue in the present appeal. Consequently, the appeal pertaining to the second action, Docket No. SC 19331, concerns only the claims made by the forty remaining plaintiffs.

For the sake of simplicity, we refer to the action at issue in Docket No. SC 19330 as the Lawrence action, and to the action at issue in Docket No. SC 19331 as the Beamer action. All references to the plaintiffs hereinafter, unless otherwise noted, include the four remaining plaintiffs in the Lawrence action and the forty remaining plaintiffs in the Beamer action.

[2] We note that, in addition to O & G Industries, Inc., the following companies were named as defendants in both the Lawrence action and the Beamer action: Kleen Energy Systems, LLC, Bluewater Energy Solutions, Inc., Power Plant Management Services, LLC, Siemens Energy, Inc., Worley Parsons Group, Inc., Algonquin Gas Transmission, LLC, Spectra Energy Operating Company, LLC, Spectra Energy Transmission, LLC, and Spectra Energy Corporation.

Although Algonquin Gas Transmission, LLC, Spectra Energy Operating Company, LLC, Spectra Energy Transmission, LLC, and Spectra Energy Corporation, were named as defendants, they are not parties to the present appeal. Consequently, we refer to O & G Industries, Inc., Kleen Energy Systems, LLC, Bluewater Energy Solutions, Inc., Power Plant Management Services, LLC, Siemens Energy, Inc., and Worley Parsons Group, Inc., collectively, as the defendants.

[3] The plaintiffs appealed separately from the judgments of the trial court to the Appellate Court, which, sua sponte, consolidated the appeals for oral argument and decision pursuant to Practice Book § 61-7. Subsequently, we transferred the consolidated appeal to this court pursuant to General Stat-

utes § 51-199 (c) and Practice Book § 65-1.

[4] The relevant counts are counts one through forty of the operative complaint in the Beamer action, and counts five, seven, nine, and eleven of the operative complaint in the Lawrence action.

[5] Unless otherwise noted, all references to the trial court hereinafter are to Judge Bright.

[6] In counts six, eight, ten, and twelve of the operative complaint in the Lawrence action, and count forty-three of the operative complaint in the Beamer action, the plaintiffs alleged that the defendants had engaged in ultrahazardous activity, rendering them strictly liable for the plaintiffs' losses. The trial court granted the defendants' motions to strike these counts. Those decisions are not, however, at issue in this appeal.

[7] The defendants also contend that the plaintiffs' appellate claims are unreviewable because their brief "does not address the trial court's public policy determination" and improperly focuses on the economic loss doctrine in a way that is inconsistent with how the trial court actually decided the case. We disagree with the defendants' contention that the plaintiffs' brief is so substantively deficient as to constitute abandonment by inadequate briefing. See, e.g., *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 124–26, 956 A.2d 1145 (2008).

[8] The defendants also argue that, independent of a duty analysis, this court should adopt the economic loss doctrine as a "categorical bar" to a plaintiffs' recovery of "economic loss, in the form of lost wages, in tort absent damage to person or property." The defendants contend that adoption of this approach is "in line with Connecticut common law," citing in particular *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven Railroad Co.*, supra, 25 Conn. 265. As the defendants recognize, given our conclusion with respect to the public policy prong of the duty analysis, we need not consider their claim that we should adopt the economic loss doctrine as a categorical bar to claims of economic loss in negligence cases without property damage or physical injury. Indeed, we agree with the trial court's observation that the "[economic loss] doctrine, as employed in tort cases to preclude a plaintiff's claim, is merely another way of saying that the defendant[s] owed no duty to the plaintiff because the claimed loss was a remote and indirect consequence of the misconduct of the defendants." (Internal quotation marks omitted.) Thus, we need not consider the per se bar advocated by the defendants for all negligence cases presenting purely economic loss. For additional discussion of the economic loss doctrine, see footnotes 15 through 18 of this opinion.

[9] This court also observed that the case raised the question of "whether under the common law system, a party is liable, civiliter, for the destruction of human life, whatever the nature of the consequences may be, or however clearly such a wrong may involve pecuniary damage." *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven Railroad Co.*, supra, 25 Conn. 271. This court concluded that it had "no inclination to abrogate the [common-law] doctrine, that the death of a human being, whatever may be its consequences in a pecuniary or in any other aspect, is not an actionable injury." Id., 273–74; but see, e.g., *Ecker* v. *West Hartford*, 205 Conn. 219, 227–31, 530 A.2d 1056 (1987) (discussing common-law doctrine and evolution of statutory action for wrongful death under General Statutes § 52-555).

[10] The court also noted that it "would be unfair to argue, that when two parties make a contract, they design to provide for an obligation to any other persons than themselves and those named expressly therein, or to such as are naturally within the direct scope of the duties and obligations prescribed by the agreement. On this point it is enough to say, that when an agreement is entered into, neither party contemplates the requirement from the other, of a duty towards all the persons to whom he may have a relation by numberless private contracts, and who may therefore be affected by the breach of the other's undertakings." *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven Railroad Co.*, supra, 25 Conn. 276.

[11] The court further posited that any such recovery by an insurer could not be "by color of their own legal right," but could be obtained pursuant to the doctrine of equitable subrogation. *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven Railroad Co.*, supra, 25 Conn. 277–78.

[12] This court has both refined and applied the rule of *Connecticut Mutual Life Ins. Co.* in the ensuing one and one-half century. See, e.g., *Fidelity & Casualty Ins. Co.* v. *Sears, Roebuck & Co.*, 124 Conn. 227, 234–36, 199 A. 93 (1938) (discussing exception to *Connecticut Mutual Life Ins. Co.* principle providing for liability for intent to cause economic harm, such as for intentional interference with contractual relationships); *Ganim* v. *Smith & Wes-*

*son Corp.*, 258 Conn. 313, 347–48, 780 A.2d 98 (2001) (This court followed *Connecticut Mutual Life Ins. Co.* in concluding that "if the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. Where, for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them."); *Sylvan R. Shemitz Designs, Inc.* v. *Newark Corp.*, 291 Conn. 224, 241–42 n.17, 967 A.2d 1188 (2009) (holding that trial court improperly relied on *Connecticut Mutual Life Ins. Co.* in concluding that lighting fixture manufacturer's repair and replacement losses caused by use of defective component manufactured by defendant were nonrecoverable commercial losses, rather than compensable property damage because "[b]y expressly authorizing the defendant in a product liability action to implead any product seller that the defendant believes may be liable for the plaintiff's damages, and by authorizing contribution actions as between commercial parties to recover payments made pursuant to the [products liability] act, the legislature itself has drawn the line to include any seller along a product's chain of distribution whose actions may have caused the damages recoverable under the [products liability] act").

[13] The plaintiffs, however, rely upon several decisions in the construction context permitting the recovery of purely economic losses in the absence of contractual privity, personal injury, or property damage, most notably a decision from the United States District Court for the District of Connecticut, *Ins. Co. of North America* v. *Manchester*, supra, 17 F. Supp. 2d 81, and the Superior Court decisions, *A.M. Rizzo Contractors, Inc.* v. *J. William Foley, Inc.*, supra, 51 Conn. L. Rptr. 542, and *Darien Asphalt Paving, Inc.* v. *Newtown*, Superior Court, judicial district of New Britain, Docket No. CV-9804878 (December 7, 1998) (23 Conn. L. Rptr 495). In our view, these cases are either distinguishable or unpersuasive, despite the plaintiffs' argument that they fit under these cases as construction professionals bringing economic tort claims against other construction professionals. We similarly disagree with the plaintiffs' reliance on a Superior Court case that did not involve construction, *Reiner & Reiner, P.C.* v. *Connecticut Natural Gas Corp.*, supra, Superior Court, Docket No. CV-95-0551260-S. We address each of these cases in turn.

*Ins. Co. of North America* arose from a contractor's claim that the architectural and design firm that was responsible for coordinating a major construction project had done so negligently, causing the contractor to incur economic damages while performing its own duties on that project. The federal District Court reviewed numerous Superior Court decisions, including *Reiner & Reiner, P.C.*, and *DeVillegas* to conclude that Connecticut law on this point was "mixed." (Internal quotation marks omitted.) *Ins. Co. of North America* v. *Manchester*, supra, 17 F. Supp. 2d 83. Ultimately, the District Court concluded that the "plaintiff, as a contractor, has successfully stated a cause of action under Connecticut law for purely economic losses against [the] defendant, a design professional, despite the absence of contractual privity between the parties [or] personal injury or property damage to [the] plaintiff." Id., 84. In particular, the District Court relied on this court's decision in *Coburn* v. *Lenox Homes, Inc.*, 173 Conn. 567, 569, 378 A.2d 599 (1977), which had held "for the first time that a subsequent purchaser of a home could recover in negligence against the contractor for the faulty installation of a septic system in the absence of privity," because "a defectively constructed home was likely to result in damage to the owner, and that there was no reason why the builder/vendor should not be liable for the effects of his negligence if they were foreseeable." (Emphasis omitted; internal quotation marks omitted.) *Ins. Co. of North America* v. *Manchester*, supra, 84. The District Court observed that *Coburn* "clearly suggests that the distinction between property damage or personal injury, on one hand, and economic loss, on the other, would not be material to its holding" because it "is clear that a defectively constructed house is likely to result in damage to the owner . . . ." (Internal quotation marks omitted.) Id. The court further determined that "the language of the *Coburn* case suggests that any reasonably foreseeable damage suffered by the owner, including [nonproperty] or [nonpersonal] damages such as, for example, the costs of habiting elsewhere while the defect in the home was repaired, would be recoverable by the plaintiff/owner." Id. The District Court then distinguished *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven Railroad Co.*, supra, 25 Conn. 265, considering the payment of life insurance benefits in that case to be an injury so indirect as to not be foreseeable, in contrast to professional negligence cases wherein attorneys and accountants were held liable to nonprivies who had suffered only economic loss. *Ins. Co. of North America* v. *Manchester*, supra, 84–85; see id., 86 (surveying authority from

other jurisdictions holding that "the absence of privity is no bar to recovery of economic losses by construction professionals against one another, when reliance by the plaintiff is reasonably foreseeable"); accord *A.M. Rizzo Contractors, Inc.* v. *J. William Foley, Inc.*, supra, 51 Conn. L. Rptr. 542–545 (despite lack of contractual privity, power company owed duty of care to subcontractor when power company provided general contractor defective plans and direction for cable project, thus causing subcontractor to suffer economic damages in performing its contract with general contractor); *Darien Asphalt Paving, Inc.* v. *Newtown*, supra, 23 Conn. L. Rptr. 495–97 (economic loss doctrine did not bar claim that construction manager of school renovation project negligently failed to ensure that paving contractor was paid by town for its services).

In our view, *Ins. Co. of North America* and *A.M. Rizzo Contractors, Inc.*, are distinguishable and not persuasive in the present case. First, in those cases, the contractors alleged that the tortfeasor's negligent planning directly caused them to suffer economic losses in connection with their performance of their own contracts on the same projects. By contrast, in the present case, the plaintiffs, who are employees dependent on the contractors for their wages, are at least one step further removed from the negligence of the defendants and, therefore, in a more attenuated and remote position. Second, on a more basic level, *Ins. Co. of North America* considered only the foreseeability aspect of the duty analysis, and did not—beyond its survey of sister state cases—conduct the more extensive public policy analysis embraced by, inter alia, *Jaworski* v. *Kiernan*, supra, 241 Conn. 404. This diminishes the persuasive value of those cases in the present appeal, which focuses primarily on the public policy prong of the duty analysis.

We similarly disagree with the plaintiffs' reliance on *Reiner & Reiner, P.C.* In that case, the court denied the gas company's motion to strike a law firm's claims against it, alleging that its negligence caused a gas leak that required a temporary closure of the law firm's nearby offices, causing economic damages such as wages paid to employees for time not worked, overhead, and lost business. *Reiner & Reiner, P.C.* v. *Connecticut Natural Gas Corp.*, supra, Superior Court, Docket No. CV-95-0551260-S. Specifically, the court rejected the gas company's reliance on *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 381, and *DeVillegas* v. *Quality Roofing, Inc.*, supra, 10 Conn. L. Rptr. 487, and concluded that, "[c]onstruing the facts in the complaint most favorably to the plaintiffs, the court finds that the plaintiffs' economic losses are not too remote to be chargeable to the defendant." *Reiner & Reiner, P.C.* v. *Connecticut Natural Gas Corp.*, supra. In our view, *Reiner & Reiner, P.C.*, is unpersuasive because it focuses solely on foreseeability, and does not contemplate the public policy analysis required by our duty case law and directly at issue in the present appeal. See also footnote 17 of this opinion.

[14] We acknowledge, however, that neither the defendants nor the trial court contend that recognizing such a duty would by itself have a deleterious effect on the safe operation of such power plants. See, e.g., *Squeo* v. *Norwalk Hospital Assn.*, 316 Conn. 558, 574–75, 113 A.3d 932 (2015) (considering arguments that permitting bystander emotional distress claims arising from alleged medical malpractice would, inter alia, "compel health care providers to curtail visitation rights in order to reduce the chance that there will be a witness to any particular instance of medical malpractice," and "interfere with the provider-patient relationship"); *Jarmie* v. *Troncale*, supra, 306 Conn. 609 (explaining that "extending a health care provider's duty to third persons would affect the decisions of treating physicians" and interfere with physician-patient relationships).

[15] By way of background, we note that the economic loss doctrine is a multifaceted set of principles that influence three major areas concerning recovery of purely economic losses, namely: (1) "whether purely economic losses caused by a defective product are recoverable under tort law"; (2) "whether a tort claim for economic damages is viable when there is some other contract between the parties (e.g., a service contract or a contract relating to [nondefective] goods or real estate) that allocates or could have allocated the risks of economic loss"; and (3) "all of the rest of tort law." V. Johnson, "The Boundary-Line Function of the Economic Loss Rule," 66 Wash. & Lee L. Rev. 523, 526–27 (2009); see also, e.g., D. Dobbs, "An Introduction to Non-Statutory Economic Loss Claims," 48 Ariz. L. Rev. 713, 733 (2006) ("It seems impossible to formulate a single economic loss rule. Instead, the problem of recovery for pure economic loss that is unaccompanied by physical harm to person or property occurs in a number of contexts that may invoke differing concerns of policy."). As the plaintiffs note in their discussion of *Flagg Energy Development Corp.* v. *General Motors Corp.*, 244 Conn. 126, 709 A.2d 1075 (1998), overruled in part by *Ulbrich* v. *Groth*,

310 Conn. 375, 408–409, 78 A.3d 76 (2013), we previously have considered that aspect of the "economic loss doctrine [that] bars negligence claims for commercial losses arising out of the defective performance of contracts." (Emphasis omitted; internal quotation marks omitted.) *Ulbrich* v. *Groth*, supra, 399; compare id., 405 (economic loss doctrine bars plaintiffs' negligence and negligent misrepresentation claims because "both the tort claims and the warranty claim [under article 9 of Connecticut Uniform Commercial Code] are premised on the same alleged conduct with respect to the same personal property and rely on the same evidence"), with id., 412 ("the economic loss doctrine does not bar [Connecticut Unfair Trade Practices Act] claims arising from a breach of contract, including a breach of a contract for the sale of goods covered by the [Connecticut Uniform Commercial Code], when the plaintiff has alleged that the breach was accompanied by intentional, reckless, unethical or unscrupulous conduct").

The present case, however, implicates the third economic loss field, namely, general tort claims that implicate only economic harm. Although we need not reach the defendants' argument that we should adopt the economic loss doctrine as a categorical bar to claims of economic loss in the absence of physical injury, property damage, or breach of contract; see footnote 8 of this opinion; the cases on point applying the economic loss doctrine in this factual context nevertheless serve as persuasive authority in our analysis of the other jurisdictions factor under *Jaworski* v. *Kiernan*, supra, 241 Conn. 404.

[16] In *Robins Dry Dock & Repair Co.* v. *Flint*, supra, 275 U.S. 309–10, an admiralty case, the United States Supreme Court held that the plaintiffs, who had chartered a ship, could not bring a tort action against a shipyard for economic damages occasioned by delays resulting from damages to the ship's propeller sustained while it was in dry dock pursuant to a contract between the shipyard and the ship's owner. Noting that the plaintiffs had no basis for recovery in contract; see id., 307–308; the court held that the "damage was material to [the plaintiffs] only as it caused the delay in making the repairs, and that delay would be a wrong to no one except for the [shipyard's] contract with the owners. The injury to the propeller was no wrong to the respondents but only to those to whom it belonged. But suppose that the respondent's loss flowed directly from that source. Their loss arose only through their contract with the owners—and while intentionally to bring about a breach of contract may give rise to a cause of action . . . no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. . . . The law does not spread its protection so far." (Citations omitted.) Id., 308–309.

A majority of other jurisdictions has adopted, in a variety of factual contexts, this aspect of the economic loss doctrine, as explained in *Robins Dry Dock & Repair Co.* v. *Flint*, supra, 275 U.S. 308–309. See, e.g., *Aguilar* v. *RP MRP Washington Harbour, LLC*, 98 A.3d 979, 985–86 (D.C. 2014); *FMR Corp.* v. *Boston Edison Co.*, 415 Mass. 393, 394–95, 613 N.E.2d 902 (1993); *Aikens* v. *Debow*, 208 W. Va. 486, 493, 541 S.E.2d 576 (2000). It also has been adopted by the American Law Institute. See 4 Restatement (Second), Torts § 766C, pp. 23–24 (1979); id., comment (a), p. 24; see also Restatement (Third), Torts: Liability for Economic Harm § 55 and reporter's note (a) (Tentative Draft No. 2, 2014) (considering retention of principle); footnotes 15 and 18 of this opinion.

[17] We note that numerous courts applying these principles in the analogous context of claims brought by businesses that have suffered purely economic losses as a result of a defendant's negligence have reached a conclusion inconsistent with *Reiner & Reiner, P.C.* v. *Connecticut Natural Gas Corp.*, supra, Superior Court, Docket No. CV-95-0551260-S, upon which the plaintiffs rely in this appeal. See, e.g., *FMR Corp.* v. *Boston Edison Co.*, 415 Mass. 393, 394–95, 613 N.E.2d 902 (1993) (affirming award of summary judgment in favor of defendants on claims for lost income and increased costs of operation from negligently caused blackout); *532 Madison Avenue Gourmet Foods, Inc.* v. *Finlandia Center, Inc.*, 96 N.Y.2d 280, 290–92, 750 N.E.2d 1097, 727 N.Y.S.2d 49 (2001) (trial court properly dismissed claims for economic losses arising from multiweek business closures resulting from building collapse caused by defendants' negligence); *Aikens* v. *Debow*, 208 W. Va. 486, 499–500, 541 S.E.2d 576 (2000) (defendants owed no duty to motel owner, precluding compensation for purely economic damages caused when their truck damaged nearby highway bridge, requiring extended road closure that decreased motel's revenues); see also footnote 13 of this opinion.

[18] A minority of jurisdictions reject the application of the economic loss doctrine embodied in these cases; the "New Jersey Supreme Court's approach to this concept is recognized as the leading authority for the minority view and represents a departure from a substantial collection of American and British cases." *Aikens* v. *Debow*, 208 W. Va. 486, 497, 541 S.E.2d 576 (2000). In *People Express Airlines, Inc.* v. *Consolidated Rail Corp.*, 100 N.J. 246, 248–49, 495 A.2d 107 (1985), the New Jersey Supreme Court permitted a commercial airline to seek only economic damages resulting from the interruption of its business caused by an airport evacuation required when a railroad's claimed negligence caused a chemical leak from a tank car in a yard adjacent to the airport. After discussing the evolution of the economic loss doctrine embodied by *Robins Dry Dock & Repair Co.* v. *Flint*, supra, 275 U.S. 303, the New Jersey Supreme Court noted that the concerns for the "alleged potential for infinite liability, or liability out of all proportion to the defendant's fault," is not "confined to negligently-caused economic injury." *People Express Airlines, Inc.* v. *Consolidated Rail Corp.*, supra, 253. The court observed that the "common threads" of the numerous exceptions to the economic loss rule; id., 256–58; led to the conclusion that "a defendant who has breached his duty of care to avoid the risk of economic injury to *particularly foreseeable plaintiffs* may be held liable for actual economic losses that are proximately caused by its breach of duty. In this context, those economic losses are recoverable as damages when they are the natural and probable consequence of a defendant's negligence in the sense that they are reasonably to be anticipated in view of [the] defendant's capacity to have foreseen that the particular plaintiff or identifiable class of plaintiffs . . . is demonstrably within the risk created by [the] defendant's negligence." (Citation omitted; emphasis added.) Id., 267. Applying this "particular foreseeability" standard, the court held that the railroad owed a duty of care to the airline that operated nearby because of "the obvious nature of the [airline's] operations and particular foreseeability of economic losses resulting from an accident and evacuation; the defendants' actual or constructive knowledge of the volatile properties of [the train's contents]; and the existence of an emergency response plan prepared by some of the defendants . . . which apparently called for the nearby area to be evacuated to avoid the risk of harm in case of an explosion." Id., 267–68; see also id., 263–64 (noting, in dicta, that railroad would have no duty with respect to economic injury suffered by members of general public traveling nearby, or business invitees on airline's premises because, although "they are a foreseeable class of plaintiffs," "their presence within the area would be fortuitous, and the particular type of economic injury that could be suffered by such persons would be hopelessly unpredictable and not realistically foreseeable"); id., 268 (cautioning that trial court's "examination" of proof of damages "must be exacting"). The courts adopting the majority approach set forth previously in this opinion expressly reject the approach adopted by the New Jersey Supreme Court, criticizing it as "lack[ing] . . . a coherent limiting principle." *Aguilar* v. *RP MRP Washington Harbour, LLC*, supra, 98 A.3d 984; see also *United Textile Workers of America, AFL-CIO* v. *Lear Siegler Seating Corp.*, supra, 825 S.W.2d 86 (describing *People Express Airlines, Inc.*, as "contradictory and inconsistent").

Beyond New Jersey, other states whose cases are considered consistent with the minority position in permitting the recovery of purely economic damages in certain circumstances are Alaska, California, Montana, and West Virginia. See *Mattingly* v. *Sheldon Jackson College*, 743 P.2d 356, 360–62 (Alaska 1987) (following *People Express Airlines, Inc.*, and holding that drain cleaning company could bring action for economic damages, such as lost business income and expenses, incurred when trench dug by defendants collapsed on its employees); *J'Aire Corp.* v. *Gregory*, 24 Cal. 3d 799, 804–806, 598 P.2d 60, 157 Cal. Rptr. 407 (1979) (articulating "special relationship" exception with focus on, inter alia, foreseeability, connection between defendant's conduct and injury suffered by plaintiff, "moral blame attached to the defendant's conduct," and "policy of preventing future harm," and concluding that contractor owed restaurant duty of care and could be held liable for economic damages caused by extended closure of restaurant resulting from contractor's negligence during performance of contract with restaurant's landlord); *Hawthorne* v. *Kober Construction Co.*, 196 Mont. 519, 523–24, 640 P.2d 467 (1982) (steel supplier, who had contract with general contractor, owed duty of care to subcontractor who suffered economic losses due to steel supplier's negligence in delivering steel under contract); *Aikens* v. *Debow*, supra, 208 W. Va. 499 (The court adopted a rule permitting recovery of "purely economic loss from an interruption in commerce caused by another's negligence" when there is "some other special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that

the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor. The existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general. It may be evident from the defendant's knowledge or specific reason to know of the potential consequences of the wrongdoing, the persons likely to be injured, and the damages likely to be suffered.").

Interestingly, with respect to the present appeal, the California Supreme Court, in articulating the special relationship exception in *J'Aire Corp.*, expressly "disapproved" in dicta of an appellate court decision in *Adams v. Southern Pacific Transportation Co.*, 50 Cal. App. 3d 37, 123 Cal. Rptr. 216 (1975), which had barred employees from suing a railroad "whose cargo of bombs exploded, destroying the factory where they worked." *J'Aire Corp. v. Gregory*, supra, 24 Cal. 3d 807 and n.4.

---